UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
GARY GRIFFIN,

                *Plaintiff*,

      -against-

JACOBI MEDICAL CENTER, *et al*,

                *Defendants*.
------------------------------------------------------------x

21-cv-08247 (PAC)

**OPINION & ORDER**

Plaintiff Gary Griffin alleges that Defendants Jacobi Medical Center and the New York City Health and Hospitals Corporation (collectively, "Hospital Defendants"), and Jacqueline Mahal, M.D., Darnell A. Cain, M.D., Charles Ofori-Ampomah, R.N., Jermine Rickets, R.N., and Styve Pamphile, M.D. (collectively, "Jacobi Staff") forced him to remain at the Jacobi Medical Center and subjected him to medical treatment against his will. *See* Am. Compl., ECF No. 13. Griffin alleges that the Jacobi Staff violated and conspired to violate the Fourth and Fourteenth Amendments of the U.S. Constitution, pursuant to 42 U.S.C. § 1983 (Counts I, VII), and that they violated state law for assault (Count III), battery (Count IV), and intentional infliction of emotional distress ("IIED") (Count V). Griffin also appears to assert claims against the Hospital Defendants pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count II) and respondeat superior liability (Count VI).

The Hospital Defendants and the Jacobi Staff now move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot., ECF No. 50. For the reasons that follow, the motion to dismiss the conspiracy claim (Count VII), state law claims (Counts III, IV, and V), and *Monell* and respondeat superior claims (Counts II and VI) against these Defendants is **GRANTED**. The Jacobi Staff's motion to dismiss the claims based on the Fourth and Fourteenth Amendments brought pursuant to § 1983 is **DENIED**.

1

## BACKGROUND

The following is drawn from the Amended Complaint. At this stage, the Court must construe the factual allegations as true and view the Amended Complaint in the light most favorable to Plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). On December 15, 2018, Griffin was taken by ambulance to the emergency room at Jacobi Medical Center for treatment after being involved in a car accident. Am. Compl. ¶¶ 26–27. The New York City Health and Hospitals Corporation ("HHC") owns and operates the Jacobi Medical Center. *Id.* ¶¶ 11–13, 15. The Jacobi Staff cleared Griffin for discharge, telling him to follow up with his own doctor. *Id.* ¶ 28. Griffin expressed his desire to leave, but the Jacobi Staff and hospital police "physically restrained" him. *Id.* ¶ 29. The Jacobi Staff ordered Griffin to undergo an x-ray examination before he could leave. *Id.* When he refused and without Griffin's consent, Griffin's clothing "was torn from him," and the Jacobi Staff injected him with an unknown substance that caused him to become unconscious. *Id.* ¶¶ 29, 31. Before being injected, an unnamed individual associated with hospital police struck Griffin's head, resulting in hearing loss. *Id.* ¶ 32.

Griffin recorded some of his interactions with the Jacobi Staff and hospital police on his cell phone. Hospital police attempted to confiscate his phone while they restrained him. *Id.* ¶ 33. As described in the Amended Complaint, one of the two recordings Griffin took shows Griffin repeatedly telling hospital police and the Jacobi Staff "for at least 3 minutes" that he did not want to receive further medical attention and that he wanted to leave the hospital. *Id.* ¶¶ 34–35. According to the Amended Complaint, the video shows Defendants surrounding Griffin's gurney and "together" holding him down, removing his pants, and administering unwanted medical treatment. *Id.* ¶¶ 36, 38–39. Griffin did not submit either video with the Amended Complaint but filed one of the videos as an exhibit with his opposition to the motion to dismiss. Pl.'s Opp'n Ex.

2

A, ECF No. 48-1. Griffin alleges that he sustained severe and permanent injuries from the incident, including bruising and swelling, substantial pain, discomfort, fear, embarrassment, humiliation, severe emotional distress, and mental anguish. Am. Compl. ¶ 40.

Griffin filed his first complaint in this action on October 26, 2021, *see* Compl., ECF No. 2, and subsequently amended his complaint on December 3, 2021, *see* Am. Compl. Griffin brings claims against the Jacobi Staff (and unnamed police officers) pursuant to 42 U.S.C. § 1983, claiming that they violated his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution (Count I) and that they conspired to violate those rights (Count VII). *Id.* ¶¶ 42–44, 67–71. He also brought claims against those individuals under state law for assault (Count III), battery (Count IV), and IIED (Count V). *Id.* ¶¶ 53–62. The Amended Complaint also appears to assert claims against the City of New York, the New York City Police Department, and Hospital Defendants pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count II), and respondeat superior liability (Count VI). *Id.* ¶¶ 45–52, 63–66.

The Hospital Defendants and the Jacobi Staff now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the § 1983 claims (both the violations of the Fourth and Fourteenth Amendments and for conspiracy), the state law tort claims, and the *Monell* and respondeat superior claims. However, after filing the Amended Complaint, Griffin withdrew the only claims asserted against HHC and Jacobi Medical Center. *See* Pl.'s Opp'n 13, ECF No. 48 (clarifying the *Monell* claim does not apply); Pl.'s Ltr. Mot. 3, ECF No. 29 (withdrawing the respondeat superior claim). As a result, the motion to dismiss the *Monell* and respondeat superior claims against these

3

Defendants is granted with prejudice. The remainder of this Opinion & Order is therefore limited to Griffin's claims against the Jacobi Staff.[1]

## DISCUSSION

### I. Rule 12(b)(6) Standard

To defeat a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. For now, the task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).

In considering a Rule 12(b)(6) motion to dismiss, the court is "normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, Griffin has submitted a video with his opposition to the motion to dismiss. For a motion to dismiss, in addition to the complaint, the court may consider "documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting

---

[1] The City of New York has not moved to dismiss the Amended Complaint. *See* Answer, ECF No. 36.

4

*Roth*, 489 F.3d at 509). "Where the complaint 'relies heavily upon [a document's] terms and effect,'" it is considered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). It is true that the video is described in the Amended Complaint. *See* Am. Compl. ¶¶ 33–35, 38–39. But Griffin asserts that the video merely "corroborates" his allegations—not that it is essential or that the Amended Complaint could not be understood without the Court viewing the video. *See* Pl.'s Opp'n 7; *Harasz v. Katz*, 239 F. Supp. 3d 461, 474 (D. Conn. 2017) ("Though the Amended Complaint does reference and describe the video [of a forensic interview of a witness], it is not . . . so integral to the Amended Complaint that the Amended Complaint cannot be read or understood without also viewing the video."). Viewing the video is thus unnecessary because the Court accepts the factual allegations in the Amended Complaint as true and need not consider corroborating evidence. And even if the video could be understood as integral or sufficiently incorporated, Defendants dispute its authenticity and admissibility. Def.'s Reply 2, 9, ECF No. 49. It would therefore be improper to consider the video in context of the motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("[I]t must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.").

## II.    Section 1983 Liability

Section 1983 imposes civil liability on any party who, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights

elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). To assert a cognizable § 1983 claim, the plaintiff must allege "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

As the substantive basis for Griffin's § 1983 claim, he asserts that the Jacobi Staff unreasonably seized him and used excessive force in violation of the Fourth Amendment, that they subjected him to unwanted medical treatment in violation of the Due Process Clause, and that they conspired to violate those rights.[2] The Jacobi Staff do not dispute that they are state actors for purposes of § 1983, and do not raise qualified immunity. They argue that Griffin has failed to state a claim that they deprived him of rights guaranteed by the Fourth or Fourteenth Amendments or that they conspired to violate those rights.

---

[2] The Amended Complaint also cites 42 U.S.C. §§ 1981 and 1985 as a basis for the alleged constitutional violations of the Fourth Amendment and Due Process Clause. *See* Am. Compl. ¶¶ 42–44, ECF No. 13. While the parties have hardly briefed how those statutes apply to this case, the Court agrees with Defendants that the Amended Complaint fails to allege facts to support claims under those statutes. Section 1981 concerns discrimination in the making of and enforcing contracts. Section 1985 requires a conspiracy. Nothing in the Amended Complaint suggests discrimination, and for the reasons set forth in assessing Plaintiff's § 1983 conspiracy claim, Plaintiff has failed to allege the requisite type of agreement to plead a conspiracy claim. However, Griffin may, if he desires, re-plead claims under §§ 1981 and 1985.

### A. Fourth Amendment: Unreasonable Seizure (Count I)

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend IV. These protections "appl[y] in the civil context as well." *Soldal v. Cook Cnty.*, 506 U.S. 56, 67 (1992). A "seizure" under the Fourth Amendment "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). Involuntarily taking an individual to a hospital or forcing them to stay there for the purpose of administering treatment constitutes a "seizure." *See Green v. City of New York*, 465 F.3d 65, 85 (2d Cir. 2006); *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993).

The Fourth Amendment, however, does not prohibit all seizures but only unreasonable ones. For example, forcibly detaining a "competent adult" in a hospital for treatment is unreasonable under the Fourth Amendment unless the individual presents a danger to oneself or others. *Green*, 465 F.3d at 83. Refusing medical treatment does not itself create the danger "because competent adults have a well-established right to refuse medical treatment." *Id.* at 84 n.13. In *Green*, for example, the Second Circuit concluded that (in responding to a 911 call) a city employee's forcible transport of the plaintiff to a hospital could be an unreasonable seizure. *Id.* at 73, 84 (reversing the grant of summary judgment due to disputes of material facts). The plaintiff, who had returned to "acceptable" oxygen levels and a normal state of breathing and had been observed by others on the scene as alert, conscious, and able to communicate, explicitly declined medical treatment. *Id.* at 71, 83. If a jury accepted the plaintiff's version of the facts, the circumstances supported that the plaintiff was not "incompetent to make decisions concerning his treatment or a threat to himself or others," and his "right to remain free of an unreasonable seizure was violated." *Id.* at 83–84.

7

### 1. *The Sufficiency of Griffin's Allegations*

Griffin adequately pleads that he was seized within the meaning of the Fourth Amendment. He alleges that despite the Jacobi Staff initially clearing him for discharge, his protests of further medical treatment, and his requests to leave the hospital, they surrounded his hospital bed and physically restrained him to it. Am. Compl. ¶¶ 28–29, 35–36. That amounted to a seizure. Griffin also alleges facts to support that the seizure was unreasonable. Nothing in the Amended Complaint suggests that, at the point the Jacobi Staff refused to allow him to leave, Griffin was dangerous to himself or others. Indeed, Griffin alleges that he was brought to the hospital for treatment stemming from a car accident and that the Jacobi Staff wanted to perform an x-ray before allowing him to leave. *Id.* ¶¶ 26–27, 29. Neither a car accident nor receiving an x-ray fairly imply that Griffin would have been dangerous. In addition, the emergency room staff cleared him to leave, *id.* ¶ 28, which they presumably would not have done if he was in danger. Moreover, the Court can infer from Griffin's allegations that he was competent to make decisions regarding his medical treatment. Griffin was cognizant enough of his surroundings to use his cell phone to record a portion of the incident. *Id.* ¶¶ 33–34. Such allegations are sufficient to support a claim that the Jacobi Staff's conduct amounted to an unreasonable seizure. *See Eze v. City Univ. of New York at Brooklyn Coll.*, No. 11-cv-2454-JG, 2011 WL 6780652, at *5 (E.D.N.Y. Dec. 27, 2011) (concluding the plaintiff properly pleaded a § 1983 claim because she alleged that she asked college security officials for "advice regarding legitimate problems with her roommates and landlord" and answered questions about her mental health in an "entirely normal" manner, so "there was nothing to suggest that [plaintiff] was a danger to herself or others" to justify the forcible transport to a hospital by school officials).

8

## 2. *The Jacobi Staff's Counterarguments*

The Jacobi Staff argue, despite these clear allegations, that Griffin's unreasonable seizure claim is not sufficiently pleaded because he fails to allege that he was initially admitted to the hospital against his will. But he later objected—communicated to the Jacobi Staff—to remaining at the hospital for treatment. *See Green*, 465 F.3d at 85 (acknowledging that the plaintiff there had a claim for his forcible transport to the hospital even absent objections to the treatment received at his home and at the hospital). Even if Griffin consented to being transported to the hospital, the Jacobi Staff physically restrained him and told him that he was no longer free to leave, changing the nature of the encounter. *Cf. United States v. Mendenhall*, 446 U.S. 544, 552–54 (1980) (describing cases that illustrate where encounters with the police may not initially amount to a "seizure" but ultimately do based on the officer's physical force or show of authority). Moreover, a seizure that is initially reasonable may later become unreasonable depending on the circumstances, *see Rodriguez v. United States*, 575 U.S. 348, 354 (2015), so the fact that Griffin initially consented to going to the hospital is of no consequence.

The Jacobi Staff argue that the Amended Complaint is deficient in several other ways, all of which are arguments more properly considered with further factual development. First, they argue Griffin failed to allege the absence of probable cause. The facts alleged are likely sufficient to demonstrate that the Jacobi Staff did not have probable cause to believe that Griffin was a danger to himself or others. Regardless, on a motion to dismiss, "it is not Plaintiff's obligation to establish that the [actors] lacked probable cause; rather, he 'must merely allege sufficient facts to put Defendants on notice of his claims and the grounds upon which they rest.'" *Kaplan v. Cnty of Orange*, 528 F. Supp. 3d 141, 166 (S.D.N.Y. 2021) (brackets and citation omitted).

9

Relatedly, they argue that Griffin failed to plead Defendants seized him in violation of the "governing legal standard." In support of this proposition, they cite cases that involve involuntary hospitalization under the New York State Mental Hygiene Law ("NYMHL"). *See* Def.'s Mem. Law 10–11 (citing, for example, *Spencer v. Bellevue Hosp.*, No. 11-cv-7149, 2012 WL 1267886, at *7, 9 (S.D.N.Y. Apr. 12, 2012)). Accepting the allegations as true, the Amended Complaint does not suggest that this case arose in that context. Griffin does not allege that the Jacobi Staff sought to perform a mental health evaluation or that he was originally admitted to the hospital for that or a related purpose. The Court therefore will not require Griffin to allege facts to support legal standards under a law that, at this point, appears inapplicable to his allegations.

Finally, the Jacobi Staff argue that "a doctor will not be liable under § 1983 for the treatment decisions she makes unless such decisions are 'such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such a judgment.'" *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) (alteration in original) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). Arguments about departure from practice are typically weighed on a motion for summary judgment after the parties have had an opportunity to present evidence about the prevailing practices and standards doctors follow, *see, e.g.*, *Todd v. New York City Health & Hosps. Corp.*, No. 16-cv-2124, 2021 WL 4463214, at *6 (E.D.N.Y. Sept. 29, 2021) (collecting cases), making this an inappropriate basis to dismiss the Amended Complaint.

### B. Fourth Amendment: Excessive Force (Count I)

The Amended Complaint also asserts that the Jacobi Staff used excessive force in violation of the Fourth Amendment. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged

10

application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). When the plaintiff alleges that excessive force is used during the course of a seizure, the claim is analyzed under the Fourth Amendment and its "reasonableness standard." *See id.* at 395. Applying the reasonableness standard "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (citation omitted). The Court considers a number of factors to conduct this balancing, including the necessity of the force used, "the relationship between the need and the amount of force that was used," and "the extent of injury inflicted." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016). The "application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). Because the test is based on the actor's objective reasonableness, on a motion to dismiss, "dismissal is only 'appropriate if, accepting all of the allegations as true, it is clear that the force used by the [actors] was objectively reasonable under the circumstances.'" *Kaplan*, 528 F. Supp. 3d at 170 (citations omitted).[3]

Taking the allegations as true, Griffin alleges that the Jacobi Staff were objectively unreasonable in forcing him to undergo medical treatment. He alleges that the Jacobi Staff physically restrained him and injected him with a substance that caused him to lose consciousness.

---

[3] The Jacobi Staff argue—without any supporting authorities—that the Amended Complaint relies on the Fourth Amendment when this claim should be limited to the Due Process Clause. Even if the claims are similar, because Griffin asserts that the Jacobi Staff used excessive force while he was unreasonably seized, that is a sufficient basis to apply the Fourth Amendment reasonableness framework to this claim. *See Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (acknowledging the overlap with the Due Process Clause but also analyzing the involuntary commitment claim under the Fourth Amendment's reasonableness standard). (As discussed *infra*, the Court also weighs whether Griffin has alleged a substantive due process claim because, as Defendants concede, Griffin's allegations concern a due process right.)

Am. Compl. ¶¶ 29, 31. It is reasonably inferred from the Amended Complaint that the Jacobi Staff forcibly made him unconscious to take the x-ray he refused. *See id.* ¶ 29. Nothing in the Amended Complaint suggests that Griffin had to be x-rayed then and there, or that he was a threat to others or himself had he not been x-rayed. Indeed, the Amended Complaint alleges that Griffin was cleared to leave before being ordered to be x-rayed. *Id.* ¶ 28. Taking these allegations as true, Griffin plausibly states an excessive force claim.[4]

### C. Due Process Clause of the Fourteenth Amendment (Count I)

The Fourteenth Amendment's Due Process Clause bars the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A § 1983 claim may be brought under the substantive component of the Due Process Clause for certain "arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "As a substantive matter, due process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995); *see also Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). In addition, forcibly injecting medication into a non-consenting person's body is a "substantial interference with that person's liberty." *Washington v. Harper*, 494 U.S. 210, 229 (1990).

---

[4] Griffin alleges that he suffered bruising and swelling on his body and substantial pain, in addition to other non-physical injuries. Am. Compl. ¶ 40. These injuries are not all that significant. But while "*[d]e minimis* injuries can serve as evidence that *de minimis* force was used," courts "must look to the totality of the circumstances relating to the conduct of" the defendants, including the "manner in which the plaintiff's alleged injuries were inflicted" to determine whether the amount of force was excessive. *See Kayo v. Mertz*, 531 F. Supp. 3d 774, 798 (S.D.N.Y. 2021).

The Jacobi Staff concede that Griffin's allegations at least trigger the substantive due process right to refuse medical treatment. Def.'s Mem. Law 11, ECF No. 44. They argue, however, that the claim fails because, like Griffin's unreasonable seizure claim, the Amended Complaint fails to allege facts to support that their treatment decisions were "a substantial departure from accepted judgment, practice, or standards." *See Kulak*, 88 F.3d at 75. As with the Fourth Amendment claim, that argument is more appropriately considered on a motion for summary judgment where the Court can consider evidence about the accepted and relevant standards. *See, e.g., Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190 (2d Cir. 2005) ("[A] plaintiff ordinarily must introduce expert testimony to establish the relevant medical standards that were allegedly violated."); *Wang v. Delphin-Rittmon*, --- F. Supp. 3d. ---, 2023 WL 2624351, at *10 (D. Conn. Mar. 24, 2023) (deciding not to conclude on the motion to dismiss whether "the doctor's decision to prescribe Benadryl against Wang's will and outside the dictates of the state court's medication order was 'objectively reasonable'").

The Jacobi Staff next argue that their "routine examination or testing" was not so shocking to the conscious to state a substantive due process claim. *See* Def.'s Reply 6. In this context, to establish a substantive due process violation, the plaintiff must show that the government's action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," which requires "deliberate indifference," i.e., at least more than "mere negligence." *Charles v. Orange Cnty.*, 925 F.3d 73, 85, 87 (2d Cir. 2019) (internal quotation marks and citation omitted). "Deliberate indifference that shocks in one environment may not be so patently egregious in another." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). What the Jacobi Staff frame as "routine" treatment is alleged quite differently in the Amended Complaint. Griffin alleges he was forcibly injected with a drug and made unconscious for what the Court can reasonably infer

13

was a non-emergency x-ray. The Jacobi Staff's actions had no apparent justification. Here, Griffin adequately alleges facts to support that the Jacobi Staff acted with deliberate indifference to his right to refuse medical treatment. The motion to dismiss the § 1983 claim based on a violation of the Fourteenth Amendment is denied.[5]

### D. Conspiracy to Violate § 1983 (Count VII)

Griffin alleges that the Jacobi Staff conspired to violate his civil rights.[6] The Jacobi Staff claim that the Amended Complaint makes only conclusory assertions that fail to plead a § 1983 conspiracy claim. To survive a motion to dismiss a § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[A] plaintiff 'must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end,' augmented by 'some details of time and place and the alleged effects of the conspiracy.'" *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).

The Amended Complaint alleges that Defendants were "together conspiring" to prevent Griffin from leaving and forcing him to receive treatment, and that they "together" removed his pants and held him down to be treated. Am. Compl. ¶¶ 38–39. These allegations are too

---

[5] The Jacobi Staff argue that Griffin failed to adequately state a procedural due process claim because he does not allege noncompliance with the NYMHL's procedures. Like the Fourth Amendment claim, Griffin argues this case is unrelated to the NYMHL. Regardless, the Amended Complaint appears to assert a substantive due process claim only, and Griffin does not contend otherwise. Pl.'s Opp'n 9. The Court therefore does not address the arguments related to procedural due process.

[6] The Amended Complaint does not allege to whom this claim applies, so the Court construes this claim consistent with the parties' briefs.

14

conclusory and fail to allege the type of agreement required to plead this type of claim.[7] At best, the allegations suggest that the Jacobi Staff were reacting to both Griffin's refusal to receive medical treatment and each other's actions. *Cf. Foskey v. Northrup*, No. 20-cv-0504, 2021 WL 1146217, at *5 (N.D.N.Y. Mar. 25, 2021) ("a meeting of the minds is plausibly suggested by the coordinated nature of the alleged attack, and the fact that the attack was not a spontaneous reaction to any instant threat"); *King v. City of New York*, 581 F. Supp. 3d 559, 577 (S.D.N.Y. 2022) (granting a motion to dismiss a conspiracy claim under 42 U.S.C. § 1985(3) because the complaint merely included conclusory allegations that the defendants "acted in concert"), *aff'd*, No. 22-231, 2023 WL 2398679 (2d Cir. Mar. 8, 2023).

Moreover, there is no legal basis for Griffin's conspiracy claim to the extent that it rests on a violation of state law. "It is a well-settled and often repeated principle of New York law that no cause of action lies for civil conspiracy." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d Cir. 2005). "While a conspiracy may be alleged 'to connect a defendant to an otherwise actionable tort,' a plaintiff may not 'reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim.'" *Dorce v. City of New York*, 608 F. Supp. 3d 118, 147 (S.D.N.Y. 2022) (quoting *id.*). As discussed below, no state law claims survive the motion to dismiss. Griffin's conspiracy claim therefore also fails on this basis.

Defendants' motion to dismiss the conspiracy claim is granted without prejudice.

---

[7] Griffin argues that the video shows communication between the Jacobi Staff as they prepared to inject him, which demonstrates the existence of a conspiracy. Pl.'s Opp'n 8, 11. The Court will not consider the video in ruling on this motion, so it does not consider those arguments.

15

### III. State Law Claims (Count III: Assault; Count IV: Battery; Count V: IIED)

Griffin asserts claims for assault, battery, and IIED against the Jacobi Staff, i.e., the employees of a hospital managed by HHC. Griffin did not plead compliance with the notice-of-claim requirement and the claims are not timely, so they must be dismissed.

#### A. Procedural Requirements

In general, federal courts must apply state notice-of-claim requirements for state law claims. *See Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Under New York law, to bring tort claims against a municipality and its employees, the plaintiff must provide notice of the claim with the particular entity within 90 days after it arises. *See* N.Y. Gen. Mun. Law §§ 50–e, 50–i(1), 50–k(6); N.Y. Unconsol. Law § 7401(2) (enumerating the notice-of-claim rule for HHC, specifically). "Because timely service of a notice of claim is a statutory condition precedent to a suit against HHC, a plaintiff must plead timely service in the complaint." *Scantlebury v. New York City Health & Hosps. Corp.*, 4 N.Y.3d 606, 610 n.3 (N.Y. 2005). In addition, such claims must be filed "within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50–i(1); N.Y. Unconsol. Law § 7401(2). Griffin has not complied with these requirements.

##### 1. The Notice-of-Claim Requirement

The Amended Complaint does not allege that Griffin timely notified HHC or its employees of the claims against them. Nor does Griffin argue that he provided such notice. Griffin alleges he provided notice to the City of New York, Am. Compl. ¶ 25, but that notice is not sufficient to notify HHC and thereby the Jacobi Medical Center's employees. *See Scantlebury*, 4 N.Y.3d at 614 (concluding that notice to the City of New York was insufficient to meet the statutory

16

requirements to provide notice to HHC). Even had he provided notice, the state tort claims are time barred. Griffin alleges that these torts were committed on or about December 15, 2018. He did not commence this suit until October 26, 2021—nearly two years after the statute of limitations had run.

### 2. *The Statute of Limitations*

Griffin argues that the three-year statute of limitations that applies to § 1983 claims, *see Kane v. Mount Pleasant Cent. Sch. Dist.*, --- F.4th ---, 2023 WL 5281533, at *4 (2d Cir. Aug. 17, 2023), should apply to his state law tort claims because they are brought under § 1983. That argument is meritless. "Section 1983 'is not itself a source of substantive rights,'" but merely provides a mechanism to vindicate rights conferred by the federal constitution and laws of the United States. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker*, 443 U.S. at 144, n.3). That the underlying facts supporting a § 1983 claim could apply to a state law tort claim does not mean the former cause of action becomes the latter. Griffin's failure to properly notify HHC of his claims and to file them within the statute of limitations is fatal to the state law claims. *Diaz v. City of New York*, No. 13-cv-8281-PAC, 2015 WL 427454, at *7 (S.D.N.Y. Feb. 2, 2015). The motion to dismiss the state law claims is granted with prejudice.[8]

## CONCLUSION

For the reasons stated, the Court **DENIES** the motion to dismiss the § 1983 claims based on the Fourth Amendment and the Due Process Clause. The Court **GRANTS** the motion to dismiss claims filed against HHC and Jacobi Medical Center with prejudice, and both defendants are dismissed from this action. The Court also **GRANTS** the motion to dismiss the state law tort

---

[8] As a result, the Court need not address Defendants' argument that Griffin failed to adequately plead punitive damages under New York law.

17

claims with prejudice and **GRANTS** the motion to dismiss the § 1983 conspiracy claims and claims brought under §§ 1981 and 1985 without prejudice. Plaintiff may file a second amended complaint within 21 days from the filing of this Opinion and Order. The Clerk of the Court is directed to close ECF No. 50.

Dated: New York, New York        SO ORDERED

    September 21, 2023

_____
HONORABLE PAUL A. CROTTY

United States District Judge